TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
Assistant United States Attorney
National Security Division
Federal Courthouse, 11th Floor
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2686/5748
Facsimile: (213) 894-6269
E-mail: James.Dochterman@usdoj.gov
Amanda.Elbogen@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ONE 2012 GULFSTREAM G550 AIRCRAFT, BEARING TAIL NUMBER B-8259 AND MANUFACTURER SERIAL NUMBER 5357,<br><br>Defendant. | Case No. 2:26-cv-12609<br><br><u>VERIFIED COMPLAINT FOR FORFEITURE</u><br><br>50 U.S.C. § 4820(j)<br><br>[FBI] |

Plaintiff United States of America brings this claim against defendant one 2012 Gulfstream G550 Aircraft, bearing tail number B-8259 and manufacturer serial number 5357 (the "defendant aircraft"), and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff United States of America brings this *in rem* forfeiture action pursuant to 50 U.S.C. § 4820(j).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1355.

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America.

5. The defendant aircraft was seized at 6350 Kulis Drive, Anchorage, Alaska 99502 by law enforcement officers on or about May 24, 2026, pursuant to the execution of a federal seizure warrant.

6. The defendant aircraft is registered to Deer Jet (Beijing) Co., Ltd., and is in the custody of the Federal Bureau of Investigation (FBI) in the Eastern District of Virginia, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Deer Jet (Beijing) Co., Ltd., may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

8. The Federal Bureau of Investigation (FBI) and the Department of Commerce, Bureau of Industry and Security (BIS) regularly investigate compliance with United States laws controlling the use of U.S. commodities. Here, a "U.S. commodity aircraft" (*i.e.*, an aircraft manufactured in the United States) is subject to controls affecting country-to-country transfers. One may export an aircraft from the United States to certain foreign countries, but restrictions apply if the aircraft is to be exported to other countries, such as The Islamic Republic of Iran. Likewise, transporting the U.S. commodity aircraft from an intermediary country, like the People's Republic of China, to a restricted country (Iran), is known as a reexportation.

9. When an entity reexports a U.S. commodity aircraft, it is required to obtain

a license from the U.S. Department of the Treasury, Office of Foreign Assets Control (OFAC) – but said license would only authorize the aircraft to remain in Iran on a temporary sojourn for a maximum of 72 hours.

10. Not only was no license obtained for the defendant aircraft's December 2024 travel stay in Iran, but the defendant aircraft also remained in Iran in excess of the maximum period allowed, even if the required license had been obtained. Accordingly, and as more fully explained below, the defendant aircraft is subject to forfeiture. The relevant regulations pertaining to United States aircraft travel to Iran and the government's entitlement to forfeiture are set forth below.

**Regulatory Background**

International Emergency Economic Powers Act and
Iranian Transactions and Sanctions Regulations

11. The International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, authorizes the President of the United States to impose economic sanctions on a foreign country, individual, or organization in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

12. On March 15 and May 6, 1995, the President of the United States issued Executive Orders 12957 and 12959, prohibiting the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. A subsequent order, Executive Order 13059, clarified these prohibitions (collectively, the "Executive Orders"). In relevant part, the Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions and Sanctions Regulations (ITSR), 31 C.F.R. Part 560.

13. The ITSR generally prohibit the export, reexport, sale, or supply, directly or indirectly, from the United States or by a U.S. person, of any goods, technology, or

services to Iran. 31 C.F.R. § 560.204. Additionally, as relevant here, the ITSR also generally prohibit the reexport to Iran, knowingly undertaken by a non-U.S. person, of any goods, technology, or services that have previously been exported from the United States. 31 C.F.R. § 560.205(a).

14. Consistent with these prohibitions, unless otherwise authorized, the reexportation of U.S.-origin fixed-wing civil aircraft, such as the defendant aircraft, from a country outside the United States to Iran is prohibited. One exception to this prohibition is set forth in General License No. J-1, which authorizes the reexportation by a non-U.S. person of certain “eligible aircraft” to Iran on temporary sojourn, subject to certain exclusions and provided that nine conditions are satisfied, including that the aircraft not remain in Iran for more than 72 hours on each temporary sojourn.

15. Section 560.528 of the ITSR provides that the Treasury Department’s Office of Foreign Assets Control (OFAC) may grant a specific license, on a case-by-case basis, for exportation or reexportation of goods (such as the defendant aircraft), services, and technology to Iran to ensure the safety of civil aviation and safe operation of U.S.-origin commercial passenger aircraft.

<u>Export Control Reform Act</u>

16. The Export Control Reform Act (ECRA), 50 U.S.C. § 4801 *et seq*., grants the President of the United States the authority to control the export, reexport, and in-country transfer of items subject to U.S. jurisdiction, whether by United States persons or foreign persons, relating to specific categories of items and activities. 50 U.S.C. § 4812(a). In addition, the ECRA grants the Department of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. §§ 4813-4815.

<u>The Department of Commerce’s Export Administration Regulations</u>

17. The Department of Commerce controls the export of certain items, including commodities (such as the defendant aircraft), software, and technology, from the United States to foreign countries through the Export Administration Regulations (EAR), 15 C.F.R. parts 730-774. The EAR restricts the export of items for national

security, foreign policy, and other interests of the United States as reflected in international obligations and arrangements. It also restricts exports of items that could make significant contributions to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. 15 C.F.R. § 742.4. The EAR imposes licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another. *See* 15 C.F.R. § 730.7.

<u>The Commerce Control List and Export Control Classification Numbers</u>

18. Sensitive items subject to EAR controls are identified on the Commerce Control List (CCL), 15 C.F.R. part 774. Items on the CCL are categorized by Export Control Classification Number (ECCN), each of which has export control requirements depending on destination, end use, and end user. Aircraft and aircraft parts and components are specified items under ECCN 9A991 and are controlled for anti-terrorism purposes.

<u>Iran-Related Export Controls Under the EAR</u>

19. Pursuant to Section 746.7 of the EAR, the Department of Commerce maintains licensing requirements on exports and reexports to Iran as described in paragraph (a)(1) of that section or elsewhere in the EAR (including § 742.8, Antiterrorism: Iran). 15 C.F.R. § 746.7.

20. Section 742.8 of the EAR provides that a license is required for anti-terrorism (AT) purposes to export or reexport to Iran an item for which AT Column 1 or AT Column 2 is indicated in the Country Chart column of the applicable ECCN. *See also* 15 C.F.R. § 746.7(a)(1).

21. ECCN 9A991, “Aircraft”, indicates that AT controls apply to the entire entry and that AT controls apply under AT Column 1 of the Country Chart. *See* 15

C.F.R. part 774, Supp. No. 1. Section 764.7(c) provides that no license exceptions[1] may be used for exports or reexports to Iran. Thus, exports and reexports to Iran of aircraft classified under ECCN 9A991 and controlled for anti-terrorism reasons require a license, and no license exceptions are available.

The EAR's General Prohibition 10

22. The EAR also sets forth General Prohibition 10, which prohibits the continued use of an item that was known to have been exported or reexported in violation of the EAR, such as in this matter where the defendant aircraft was reexported from China to Iran without a license. 15 C.F.R. § 736.2(b)(1) (General Prohibition 10). The provision provides:

> General Prohibition 10 – Proceeding with transactions with knowledge that a violation has occurred or is about to occur (Knowledge Violation to Occur). You may not sell, transfer, export, reexport, finance, order, buy, remove, conceal, store, use, loan, dispose of, transport, forward, or otherwise service, in whole or in part, any item subject to the EAR and exported or to be exported with knowledge that a violation of the Export Administration Regulations, the Export Administration Act or any order, license, License Exception, or other authorization issued thereunder has occurred, is about to occur, or is intended to occur in connection with the item. Nor may you rely upon any license or License Exception after notice to you of the suspension or revocation of that license or exception. There are no License Exceptions to this General Prohibition Ten in part 740 of the EAR.

Notably, no license exceptions are available for General Prohibition 10.

**The Use of the Defendant Aircraft in Violation of Law.**

23. The defendant aircraft is U.S.-origin aircraft manufactured in the United States of America, including in the City of Long Beach, California.

//

---

[1] A "License Exception" is "an authorization" in the EAR that allows the "export or reexport under stated conditions [of] items subject to the Export Administration Regulations (EAR) that would otherwise require a license[.]" 15 C.F.R. § 740.1(a).

24. The defendant aircraft is subject to the EAR and classified therein under ECCN 9A991.

25. In or around December 2024, the defendant aircraft was registered to "Deer Jet (Beijing) Co., Ltd.

26. On or about December 13, 2024, the defendant aircraft traveled from Beijing, China, to Tehran, Iran, returning from Tehran to Beijing on or about December 19, 2024. The defendant aircraft remained in Tehran, Iran for the entirety of that six day period.

27. Under ITSR, 31 C.F.R. Part 560, General License No. J-1, an OFAC-issued license was required to allow the defendant aircraft to stay in Iran over 72 hours.

28. OFAC did not issue a license allowing the defendant aircraft to remain in Iran for over 72 hours, and the defendant aircraft's travel to Iran was not authorized as a temporary sojourn.

29. Under EAR, 15 C.F.R. Part 730 *et seq*., a license issued by the Department of Commerce, Bureau of Industry and Security (BIS) was required for the reexport of the defendant aircraft from China to Iran.

30. BIS did not issue a license allowing the defendant aircraft to be exported or reexported to Iran.

31. On May 24, 2026, the defendant aircraft landed in Anchorage, Alaska, where the government seized it.

## **CLAIM FOR RELIEF**

32. Based on the above, plaintiff alleges that the defendant aircraft constitutes property that has been exported, reexported, in-county transferred, or has otherwise violated a regulation, order, license or other authorization issued under 50 U.S. Code Chapter 58 Subchapter I, as described at 50 U.S.C. § 4820(a), when it was reexported from China to Iran, where it remained over 72 hour without a license. The defendant aircraft is therefore subject to forfeiture pursuant to 50 U.S.C. § 4820(j).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant aircraft;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant aircraft to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: October 28, 2026

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

/s/ *James E. Dochterman*
JAMES E. DOCHTERMAN
Assistant United States Attorney
AMANDA B. ELBOGEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# VERIFICATION

I, Paula Espita, hereby declare that:

1. I am a Special Agent of the Federal Bureau of Investigation and am familiar with this investigation.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents, which I believe to be reliable.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 28, 2026, in Orange, California.

Paula Espita
Special Agent
Federal Bureau of Investigation